UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
Honeybee Robotics, LLC,

                Plaintiff,

       - against -

Ensign-Bickford Aerospace & Defense Company,

                Defendant.
------------------------------------------------------------- x

Case No: 1:24-cv-2426

**COMPLAINT**

Plaintiff Honeybee Robotics, LLC and, by and through its undersigned attorneys, allege as follows:

### NATURE OF THE ACTION

1. By this action, Plaintiff Honeybee Robotics LLC ("Honeybee") seeks indemnification from Ensign-Bickford Aerospace & Defense Company's ("EBAD") under the parties' Transition Services Agreement ("TSA") for tax overpayments, fines, interest, penalties, attorneys' fees, and costs incurred by Honeybee due to EBAD's gross negligence and/or failure to act according to applicable law in providing TSA services to Honeybee.

### PARTIES

2. Plaintiff Honeybee is a robotics company organized in the state of Washington with a principal place of EBAD is a hardware and space systems manufacturing company organized in the state of Connecticut with a principal place of business in Simsbury, Connecticut.

### JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1), because the Plaintiff's citizenship at the time of filing was diverse from that of Defendant, and because the amount in controversy exceeds $75,000.

4. Venue is proper because the Parties have stipulated to the jurisdiction of this Court under the Amended and Restated Stock Purchase Agreement.

## FACTUAL BACKGROUND

5. As of January 5, 2022, Apiary Holdings, LLC ("Apiary") and EBAD entered into a Stock Purchase Agreement.

6. On or about February 8, 2022, Apiary and EBAD entered into an Amended and Restated Stock Purchase Agreement (the "SPA").

7. Prior to January 5, 2022, EBAD was the sole shareholder of Honeybee Robotics, Ltd. ("Honeybee Ltd").

8. Pursuant to the SPA, EBAD agreed to sell all shares of Honeybee Ltd. to Apiary.

9. On or about February 11, 2022, Honeybee Ltd. merged into Apiary and Apiary changed its name to Honeybee Robotics LLC.

10. As part of the SPA, EBAD agreed to provide certain transition services to Honeybee, as outlined in the TSA, which is attached as Exhibit A to the SPA.

11. Both the SPA and TSA are binding upon and enforceable by EBAD, Apiary, and their respective successors and permitted assigns, including Honeybee.  SPA § 9.070; TSA § 6.4.

12. Exhibit A of the TSA requires EBAD to provide Honeybee certain services described in the "Service Towers" set forth in Annex I, including, without limitation:

    a) Support oversight of accounts payable services, including accounts payable and payroll issuing and processing payments; and

    b) Support for the following services:

        i. Setting up new users;

        ii. Trouble shooting issues;

        iii. Submitting and processing ongoing payroll;

    iv. Reviewing time processing issues;

    v. Processing ADP payroll into the general ledger;

    vi. Training and assistance for payroll upload to ADP and various benefit vendors;

    vii. Property, federal, State, R&D credit, and local taxes;

    viii. Assisting in the preparation of monthly and/or quarterly sales and use tax returns;

    ix. Manual updates to pay rates and master file information (including garnishments); and

    x. Pay adjustments.

13. EBAD was responsible for performance of the above-listed services, among others, continuously from February 11, 2022 to January 1, 2023.

14. Prior to the SPA, Honeybee Ltd. operated under federal employer identification number ("EIN") 88-0193033(the "88 EIN"). When Honeybee Ltd. merged into Apiary and became Honeybee, Honeybee began operating under a new EIN: 87-4172809 (the "87 EIN").

15. Pursuant to Section 1.4 of the TSA, EBAD engaged third party service provider Automated Data Processing Insurance Agency, Inc. ("ADP") to provide certain services to Honeybee under the TSA under EBAD's supervision.  Section 1.4 required EBAD to "use commercially reasonable efforts to supervise the performance of [ ] third parties" to ensure that the services that the third parties provided met, in all material respects, the requirements of the TSA.

16. The TSA requires EBAD to indemnify Honeybee "from and against any and all Damages to the extent arising from a claim" brought against Honeybee "by a third party" "to the

extent arising from" "the gross negligence or willful misconduct of [EBAD] or any of its Personnel" in providing TSA services or EBAD's failure to "conform to applicable Law" (sic) in providing TSA services.

17. EBAD was grossly negligent in performing its responsibilities to Honeybee under the TSA;

18. EBAD failed to conform to applicable law in performing its responsibilities to Honeybee under the TSA;

19. Pursuant to the TSA, EBAD is required to indemnify Honeybee for all damages Honeybee incurs due to EBAD's gross negligence and/or violation of law.

20. EBAD's liability to Honeybee under the TSA includes liability for ADP's gross negligence, willful misconduct, and failure to conform to applicable law in the provision of services to Honeybee under the TSA.

21. As of the date of this Complaint, Honeybee has paid EBAD more than $4,000,000 for EBAD's services under the TSA.

**A.     EBAD failed to timely and accurately set up payroll under the 87 EIN for Honeybee.**

22. Pursuant to the TSA, EBAD was responsible for setting up timely payroll for Honeybee under the 87 EIN.  Yet despite knowing that Honeybee was operating under the 87 EIN as of February 11, 2022, EBAD failed to ensure that payroll was properly processed and reported under Honeybee's new EIN until August 19, 2022.

23. From March 4, 2022 through August 5, 2022, ADP, on EBAD's behalf, processed Honeybee's payroll and paid taxes under the 88 EIN (the "Employment Tax Payments"). The Employment Tax Payments equaled more than $3,000,000.

24. On August 5, 2022, ADP began processing Honeybee's payroll and making tax payments under the 87 EIN.

25. Because EBAD failed to ensure that payroll was properly processed and reported under Honeybee's new EIN between March 4, 2022 and August 5, 2022, Honeybee failed to make any timely payroll payments or filings to the IRS for the 87 EIN.

26. Because of ADP's and EBAD's payments and filings under the incorrect EIN, Honeybee was forced to pay the Employment Tax Payments again under the 87 EIN in order to avoid compounding interest and penalties. Honeybee also had to pay double employment taxes to each state for Q1 and Q2 on the 87 and 88 EIN.

27. When Honeybee flagged this issue to EBAD, EBAD assured Honeybee that the Employment Tax Payments under the 88 EIN could be reconciled and refunded by the IRS once ADP filed amended Form 941s for the 88 EIN and new Form 941s for the 87 EIN. Form 941s are quarterly tax returns that businesses are required to file to report taxes withheld from employee paychecks.

28. However, on February 10, 2023, before EBAD filed the amended Form 941s, it issued W-2s for Honeybee employees under the 87 EIN.

29. On February 28, 2023, EBAD filed the amended 941s for the 88 EIN and the new Form 941s for the 87 EIN.

30. EBAD's decision to file the W-2s under the 87 EIN before filing the amended 941s compounded EBAD's previous errors and prevented Honeybee from obtaining reconciliation from the IRS for its double employment tax payments.

31. To date, Honeybee has been unable to receive IRS refunds for the double employment tax payments, or abatement of associated penalties and interest. Honeybee has received only partial refunds from state agencies for tax overpayments. Penalties and interest assessed to Honeybee by state agencies have been only partially abated.

32. EBAD was grossly negligent and failed to comply with applicable law in failing to timely set up payroll for Honeybee under the 87 EIN.

33. EBAD was also grossly negligent and failed to comply with applicable law in attempting to remedy the issue by filing the Amended Form 941s after issuing W-2s under the wrong EIN.

34. EBAD's gross negligence and failure to comply with applicable law has caused millions of dollars in damages to Honeybee.

**B.     EBAD failed to timely issue W-2s under the correct EIN for Honeybee.**

35. For the 2022 fiscal year, IRS regulations required companies to issue Form W-2s to employees by January 31, 2023.

36. EBAD failed to ensure ADP issued Form W-2s for the 87 EIN to Honeybee's entire work force until February 10, 2023.

37. EBAD further failed to ensure ADP collected and remitted Honeybee payroll taxes to the IRS.

38. Because of EBAD's untimely issuance of the W-2s, Honeybee is exposed to a $50 penalty per late W-2 pursuant to IRS guidelines. *See* https://www.irs.gov/payments/information-return-penalties/.

39. Honeybee's workforce is approximately 450 employees, so Honeybee may have exposure to IRS penalties of approximately $22,500 for the late-issued W-2s.

40. Additionally, approximately 60% of the belatedly issued W-2s contained data errors, which required Honeybee employees to file amended tax returns.

41. In an attempt to correct this issue, ADP issued approximately 281 Forms W-2c on February 24, 2023.

42. Out of the 281 corrected W-2 forms, two additional Honeybee employees required *additional* corrections via a second W-2c.

43. One of those second W-2c forms was issued on April 8, 2023 and the other one remains outstanding.

44. EBAD, through ADP, committed gross negligence and failed to abide by applicable law by failing to timely or correctly issue W-2s for Honeybee employees.

45. EBAD's gross negligence and failure to abide by applicable law has exposed Honeybee to over thousands of dollars in potential tax penalties.

**C.     EBAD failed to timely file and pay taxes on behalf of Honeybee.**

46. EBAD also committed gross negligence and failed to abide by applicable law by failing to ensure Honeybee's tax returns were filed timely, which caused Honeybee to owe over $1,000,000 in penalties and interest to the IRS.

47. Form 941s are due 30 days after the end of each quarter. In 2022, the first quarter tax returns were due May 2, 2022, and the second quarter tax returns were due August 1, 2022.

48. EBAD failed to ensure Honeybee had tax filings for the 87 EIN for the first and second quarter of 2022 until February 28, 2023.

49. EBAD also failed to ensure ADP collected Honeybee payroll taxes, which were due April 30, 2022 and July 31, 2022, until April 27, 2023.

50. EBAD has never confirmed that Honeybee's payroll taxes have been paid in full to the appropriate tax agencies.

51. EBAD further failed to ensure that Honeybee's state tax returns were timely filed. ADP filed Honeybee's state tax returns almost a year late in the six states where Honeybee employees worked in 2022, causing those states' tax collection agencies to assess penalties and

interest similar to those assessed by the IRS. These penalties continue to accrue. Associated liens have been filed by state authorities for these amounts.

52. EBAD's failure to ensure Honeybee's taxes were filed and paid on time constitutes gross negligence and failure to abide by applicable law by EBAD.

53. Due to EBAD's and ADP's failure to timely file Form 941s and failure to timely pay payroll taxes, the IRS has assessed more than $1,000,000 in penalties and interest against Honeybee.

**D.     EBAD failed to adequately provide payroll services to Honeybee.**

54. As part of its payroll services, EBAD, through ADP, is contracted to withhold and remit garnishment checks to appropriate authorities.

55. However, on information and belief, EBAD failed to enter garnishment data into ADP's system for managing Honeybee's payroll under the 87 EIN.

56. Because of EBAD's and ADP's failures, garnishments were not withheld and remitted to authorities for certain Honeybee employees.

57. When EBAD realized this error, it attempted to correct its mistake by double-withholding garnishments from employees' paychecks.

58. Despite this double withholding, Honeybee began receiving reports from employees that they were receiving notices that their garnishments were late.

59. ADP falsely reported to Honeybee that ADP had remitted the late garnishments to authorities on September 2, 2022. ADP had not remitted the garnishments by this date.

60. When Honeybee flagged this error to EBAD, EBAD discovered that it had not selected the correct disbursement setting in ADP's system, so no withholding remittance checks were mailed to authorities.

61. Because of EBAD's and ADP's gross negligence and failure to abide by applicable law, one employee's parental rights and credit score were negatively affected due to severely late child support payments.

**E.      EBAD caused erroneous 401k contributions for Honeybee employees.**

62. When Honeybee switched from the 88 EIN to the 87 EIN, EBAD was responsible for ensuring that records of employees' year-to-date ("YTD") 401(k) contributions rolled over from the former entity to the new entity in ADP's system.

63. Failing to ensure contribution records were rolled over to the new entity would create the false impression that the Honeybee's employees' YTD contributions were starting from zero, which could cause employees to withhold and contribute 401(k) funds in excess of the annual maximum.

64. On information and belief, EBAD caused multiple data errors to be entered into the YTD 401(k) contribution figures in ADP's system. As a result, several Honeybee employees' 401(k) contributions were improperly capped before or after they reached the annual maximum.

65. EBAD's gross negligence in entering erroneous data into ADP's system caused several Honeybee employees to miss an opportunity to make the maximum contribution to their 401(k) accounts in 2022. It also exposed other Honeybee employees to additional taxes for making contributions over the annual maximum. Honeybee as an employer is also exposed to penalties and audit risk because EBAD caused Honeybee employees to make contributions over the annual maximum.

**F.      EBAD caused Medicare taxes to be withheld erroneously from Honeybee employees.**

66. Due to errors in EBAD's data entry, ADP's software erroneously withheld Medicare surtax (a tax only applicable to individuals that earn more than $200,000 per year) on individuals whose wages did not reach that threshold.

67. Affected employees were forced to reclaim the over-withheld funds on their individual income tax returns.

### G.     EBAD failed to correctly withhold Social Security from Honeybee employees.

68. EBAD's significant delay in change to the 87 EIN, which finally occurred on the August 19, 2022 payroll cycle, caused Social Security over- and under- withholding for several Honeybee employees.

69. EBAD and ADP failed to notify Honeybee that when it changed to the 87 EIN, Honeybee's employees' year-to-date Social Security withholding would restart from zero. This meant that Honeybee employees who had previously maxed out their Social Security withholding obligations for the year on the 88 EIN would have Social Security withholding resumed.  It also meant that these employees would have a lump sum removed from their paychecks for the Social Security that was not with withheld from March 4, 2022 through August 5, 2022.

70. Approximately 12 employees unexpectedly had thousands of dollars of retroactive Social Security withholding deducted from their paychecks on August 19, 2022, while others did not have adequate Social Security withheld.

71. EBAD, through ADP, demanded that Honeybee provide it $80,000 to reconcile various under-withholdings so that certain W-2s could reflect that those employees had paid sufficient social security tax.  In other words, Honeybee had to pay $80,000 of employees' Social Security taxes.

72. EBAD's gross negligence in erroneously handling Social Security taxes has caused Honeybee at least $80,000 worth of damages.

10

**H.    EBAD is required to indemnify Honeybee under the TSA.**

73. The TSA requires EBAD to indemnify Honeybee "from and against any and all Damages to the extent arising from a claim" brought against Honeybee "by a third party" "to the extent arising from" "the gross negligence or willful misconduct of [EBAD] or any of its Personnel" in providing TSA services or EBAD's failure to "conform to applicable Law" in providing TSA services.

74. EBAD and its third party service provider, ADP, were grossly negligent and failed to comply with applicable law in providing certain services to Honeybee under the TSA.

75. Accordingly, EBAD must indemnify Honeybee for any damages stemming from its gross negligence or failure to conform to applicable law.

**I.    Honeybee's damages continue to increase.**

76. To date, Honeybee has not received refunds for the majority of state and federal EIN tax double payments which equaled more than $3,000,000.

77. The IRS and state tax agencies have also assessed Honeybee tax penalties and interest in an amount equaling more than $1,000,000, the majority of which has not been abated. This amount continues to grow.

78. EBAD's under-reporting of social security also caused Honeybee to pay $80,000 in its employees' social security taxes.

79. The full amount of damages caused by EBAD's gross negligence and failure to conform with applicable law has not yet been fully ascertained but is no less than $4,000,000.

## CLAIMS

## COUNT ONE

### Declaratory Relief under 28 U.S.C. §§ 2201

11

80. Plaintiff repeats and realleges each and every allegation set forth in the above paragraphs of this Complaint as if fully set forth at length herein.

81. Under the TSA, EBAD is required to indemnify Honeybee for damages resulting from EBAD's or EBAD personnel's gross negligence or failure to conform with applicable law in providing services under the TSA.

82. Filing Forms 941, among the other actions EBAD performed on behalf of Honeybee as described above, are services contemplated under the TSA.

83. EBAD performed these services for Honeybee under the TSA and was paid for these services pursuant to the TSA.

84. EBAD was grossly negligent and failed to conform with applicable law in performing those services.

85. Honeybee was consequently damaged in an amount no less than $4,000,000 dollars.

86. EBAD contends that it is not required to indemnify Honeybee for the damages resulting from its gross negligence and failure to conform with applicable law in providing services to Honeybee pursuant to the TSA.

87. An actual, justiciable controversy exists about whether EBAD is required to indemnify Honeybee under the TSA.

88. As a result of the foregoing, Honeybee is entitled to a declaration that EBAD performed the above described services pursuant to the TSA, that EBAD's performance of these services was grossly negligent and/or failed to conform to applicable law, that EBAD's gross negligence or failure to abide by applicable law damaged Honeybee in an amount to be

determined at trial, and that pursuant to the TSA Honeybee is entitled to recover its costs and fees incurred in this action.

## COUNT TWO

### Breach of Contract

89. Plaintiff repeats and realleges each and every allegation set forth in the above paragraphs of this Complaint as if fully set forth at length herein.

90. The TSA is a valid and binding contract enforceable by EBAD, Apiary, and their respective successors and permitted assigns, including Honeybee.

91. EBAD performed services for Honeybee as prescribed by the TSA.

92. EBAD's performance of those services was grossly negligent and/or failed to conform to applicable law.

93. As a result, Honeybee was damaged in an amount to be determined at trial.

94. The TSA requires EBAD to indemnify Honeybee for damages arising from EBAD's grossly negligent performance and/or failure to conform with applicable law.

95. EBAD has refused to indemnify Honeybee for damages incurred by Honeybee as a result of EBAD's grossly negligent and illegal actions in violation of the TSA.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Honeybee respectfully request that the Court award it the following relief:

1. Enter judgment that EBAD must indemnify Honeybee for its gross negligence and failure to abide by applicable law in providing services to Honeybee under the TSA;

2. Enter judgement against EBAD in an amount to be determined at trial, but by no less than $4,000,000.

3. Award Plaintiff its reasonable costs and attorneys' fees;

4. Grant such further relief as the Court may deem just and proper.

Dated: New York, New York

March 29, 2024

        Respectfully submitted,

        DAVIS WRIGHT TREMAINE LLP

        By: */s/ John Magliery*
            John Magliery

        By: */s/ Sarah Anne Baugh*
            Sarah Anne Baugh

            1251 Avenue of the Americas, 21st Floor
            New York, NY  10020-1104
            (212) 489-8230 Phone
            (212) 489-8340 Fax
            johnmagliery@dwt.com
            sarahbaugh@dwt.com

        By: */s/ Zana Bugaighis*
            Zana Bugaighis (pro hac vice forthcoming)

            920 Fifth Avenue, Suite 3300
            Seattle, WA  98104-1610
            (206) 622-3150 Phone
            (206) 757-7700 Fax
            zanabugaighis@dwt.com

        *Attorneys for Plaintiff*